```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION
```

HOWARD COCHRAN,

           Plaintiff,

vs.                           Case No. 2:05-cv-73-FtM-29DNF

BRAD GROSSMAN, and FRANK S. GLOVER,

           Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. #64), filed on April 25, 2006. Defendants filed their supporting memorandum of law (Doc. #65) on the same date. Plaintiff filed a "Memorandum of Law in Support of Plaintiff's Motion to Order to Show Cause" (Doc. #66) on May 2, 2006. Though not properly labeled, this memorandum of law seems to be plaintiff's response to Defendants' Motion for Summary Judgment and will be referred to a such.

**I.**

Plaintiff, an inmate currently incarcerated in the Florida penal system and proceeding *pro se,* filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (Doc. #1) on February 18, 2005. He filed his Amended Complaint (Doc. #59) on April 10, 2006, which is the operative pleading. The Amended Complaint complains of events that occurred during Plaintiff's arrest, but prior to his conviction. Plaintiff names as defendants Frank S. Glover, K-9 handler for Lee County Sheriff's Department, and Brad Grossman, a Lieutenant with the

Lee County Sheriff's Department who, along with a K-9, arrested Plaintiff.

According to the Joint Pretrial Statement[1] (Doc. #75), many facts have been admitted and will not require proof at trial, including: Mr. Cochran was arrested on June 13, 2002 and convicted of trespassing and possession of burglary tools based upon the June 13, 2002 incident. A sheriff's department canine, Alco, bit Mr. Cochran on the leg. The bite did not require stitches, was treated by the use of dressings, peroxides, and other ointments, and left no scar. At the time of the arrest, Brad Grossman and Frank S. Glover were deputies of the Lee County Sheriff's Department, acting in the course and scope of their employment. Frank S. Glover was Alco's handler during the arrest. The parties dispute whether Mr. Cochran resisted being handcuffed and whether the force used was reasonable and/or de minimus. It is also unclear to what extent Mr. Cochran asserts he has back problems and the extent to which he relates them to the events in question[2]. For purposes of this motion,

---

[1] United States District Court, Middle District of Florida, Local Rule 3.06(e) states in pertinent part: "All pleadings filed by any party prior to filing of the pretrial statement shall be deemed to be merged therein . . . The pretrial statement and the pretrial order . . . will control the course of the trial and may not be amended except by order of the Court in the furtherance of justice." The Court notes that although plaintiff did not submit a statement of his case (Doc. #75, p. 2) it appears that he otherwise participated in compiling the Joint Pretrial Statement and will, therefore, be held to its contents.

[2] In deposition Mr. Cochran stated that he has no lingering back problems resulting from the events in question (Doc. #28-3, p. 18).
(continued...)

the Court will assume, as stated in plaintiff's Response, that plaintiff suffered a broken bone in his back from the events in question. (Doc. #66, p. 3.)

According to Mr. Cochran's deposition[3] (Doc. #28-2), the events of June 13, 2002 which underlay this case are as follows: Due to being drunk and lost, Mr Cochran was in a house he mistook for that of his girlfriend. (Id. at p. 24.) While in this residence, he fell asleep in a chair. (Id. at p. 19.) The next thing he remembers is being on the ground with weight on his back and the dog biting his leg and hearing the phrase "stop resisting me." (Id. at p. 20.) Subsequent to arrest and while in jail, Mr. Cochran's leg was treated daily with peroxide and bandages for approximately two and a half weeks. (Id at 19). The dog bite did not leave a scar. (Id. at p. 18).

Plaintiff brings his claim under 42 U.S.C. § 1983 for unjustifiable use of force when the K-9 unnecessarily attacked him and Officer Glover put weight on his back, in violation of his fourth amendment rights. Plaintiff seeks compensatory and punitive damages from defendants. Id. at p. 8.

---

[2](...continued)
However, plaintiff submitted a motion for a court order for release of his medical report stating that he has severe back injuries and nerve damage that he firmly believes resulted from the subject alleged incident (Doc. #78). Additionally, in his Response, plaintiff states he broke a bone in his back as a result of being "slammed to the ground" during the subject events. (Doc. #66, p. 3.)

[3]Plaintiff included a "statement of fact" in his Response (Doc. #66, p.4) which gives a very similar recounting of events.

Defendants seek Summary Judgment on the grounds that (1) undisputed evidence shows that the force used against plaintiff was reasonable, and the injury "de minimus;" and (2) Defendants are being sued in their individual capacity and are entitled to qualified immunity.

**II.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c.)  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law. Id.  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004).  To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will

bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999).

If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). This procedure is particularly useful in an excessive force case such as this, since "[t]o deny summary judgment any time a material issue of fact remains on the excessive force claim could undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Saucier v. Katz, 533 U.S. 194, 202 (2001)(internal quotation omitted). By taking the facts in the light most favorable to the party asserting the injury, the court has plaintiff's best case before it and can address the question of whether the defendant committed the constitutional violation alleged without having to assess any facts in dispute. Robinson v. Arrugueta, 415 F.3d 1252 (11th Cir. 2005), cert. denied, 126 S. Ct. 1063 (2006).

### III.

**A. Section 1983 Principles**

Title 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights,

privileges, or immunities secured by the Constitution and laws." To establish a claim under 42 U.S.C. § 1983, plaintiffs must allege and ultimately prove that (1) defendant deprived them of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, plaintiffs must allege and establish an affirmative causal connection between the defendants' conduct and the constitutional deprivation. Troupe v. Sarasota County, Fla., 419 F.3d 1160, 1165 (11th Cir. 2005), cert. denied, 126 S. Ct 1914 (2006); Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001).

Section 1983 is not itself a source of substantive rights, but merely provides a procedural mechanism for vindicating federal rights created elsewhere. "One cannot go into court and claim a 'violation of § 1983' – § 1983 by itself does not protect anyone against anything." Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002)(quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979)). See also Skinner v. City of Miami, Fla., 62 F.3d 344, 347 (11th Cir. 1995), cert. denied, 520 U.S. 1165 (1997).

**B. Fourth Amendment Principles**

An excessive force claim must be analyzed under the Fourth Amendment and its objective reasonableness standard. Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Graham v. Connor, 490 U.S. 386, 395 (1989). The right to make an arrest or investigatory stop

necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. See Graham v. Conner, 490 U.S. at 396. The Eleventh Circuit recognizes that the typical arrest involves the use of some force and perhaps injury. See Nolin v. Isbell, 207 F.3d 1253, 1257-1258 (11th Cir. 2000). The determination of whether an officer used excessive force turns on a number of factors, such as the severity of the crime, whether the suspect posed an immediate threat, and whether the suspect was resisting or fleeing. Graham v. Conner, 490 U.S. at 396; Lee V. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). The use of force must be judged on a case by case basis. Graham v. Conner, 490 U.S. at 396. Because of the lack of a bright-line standard, qualified immunity applies unless the application of the standard would inevitably lead a reasonable officer in the defendant's position to conclude that the force was unlawful. Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir. 1997), cert. denied, 525 U.S. 870 (1998); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).

The reasonableness inquiry in an excessive force case is an objective one, made in light of the facts and circumstances confronting the officer and without regard to the officer's underlying intent or motivation. Robinson, 415 F.3d at 1252. While the facts are viewed in the light most favorable to plaintiff, the determination of reasonableness is made from the perspective of the officer. Robinson, 415 F.3d at 1255; Kesinger

v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004); Carr v. Tatangelo, 338 F.3d 1259, 1267 n.15, 1268-69 (11th Cir. 2003); Garrett v. Athens-Clarke County, Ga., 378 F.3d 1274, 1279 (11th Cir. 2004). As Judge Carnes has stated, "[i]n making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more threatening that the occasional paper cut as we read a cold record accounting of what turned out to be the facts." Crosby v. Monroe County, 394 F.3d 1328, 1333-34 (11th Cir. 2004).

**C. Qualified Immunity Principles**

Plaintiff can establish a claim under the Fourth Amendment against the deputies in their individual capacities only if the deputies are not entitled to qualified immunity. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005). To be eligible for qualified immunity, defendants must first prove they were acting within the scope of their discretionary authority when the allegedly wrongful act occurred. Mercado, 407 F.3d at 1156; Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003), cert. denied, 540 U.S. 879 (2003). It is not disputed that defendants were acting within the scope of their discretionary authority during their contact with and arrest of Mr. Cochran. Consequently, the burden shifts to plaintiff to show that qualified immunity is not appropriate. Mercado, 407 F.3d at 1156; Wood, 323 F.3d at 877.

The Court conducts a two-part inquiry to determine whether qualified immunity is appropriate. Harris v.Coweta County, Ga., 433 F.3d 807 (11th Cir. 2005); Garrett, 378 F.3d at 1278-79; Dahl v. Holley, 312 F.3d 1228, 1233 (11th Cir. 2003). First, the court determines whether the summary judgment facts, viewed in a light most favorable to plaintiff, show that the officers' conduct violated a constitutional right. Brosseau, 125 S. Ct. at 598; Hope v. Pelzer, 536 U.S. 730 (2002); Saucier, 533 U.S. at 201. The second inquiry is whether, at the time of the violation, the constitutional right was clearly established in light of the specific context of the case, not simply as a broad proposition. Brosseau, 125 S. Ct. at 599-600; Dahl, 312 F.3d at 1233. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau, 125 S. Ct. at 599.

## IV.

The first question under the qualified immunity analysis is whether, viewed in the light most favorable to plaintiff, the conduct alleged deprived plaintiff of an actual constitutional right. That is, was the dog bite and/or the placing of weight on Mr. Cochran's back, in the context of the arrest, excessive force such that it violated Mr. Cochran's rights. Defendants argue that no such constitutional right has been violated, and assert that "no police officer would have a reasonable belief that the use of a

police dog and pressure on somebody's back would clearly violate Cochran's constitutional rights." (Doc. #65, p. 9.) Defendants further argue that the *de minimus* force rule as articulated and applied in Nolan v. Isbell, 207 F.3d 1253 (11th Cir. 2000), prohibits plaintiff from pursuing a federal civil rights claim even if the force used was excessive. The Court agrees.

It is undisputed that the defendants were at the scene in their official capacity as law enforcement officers to arrest a man for entering a dwelling that was not his. It is also undisputed that defendants issued verbal warnings and commands, and that plaintiff failed to respond to them. (Doc. #65, p. 2; Doc. #28-2, p. 13.) Viewed in plaintiff's favor, the evidence establishes that at the time of the arrest, Mr. Cochran was asleep and unaware he had been given orders by the officers (Doc. #66, p. 4). From the perspective of the defendant officers, they were dealing with a non-compliant burglary suspect in a dark house. They had no way of knowing whether he posed a threat to them, or whether his silence was passive resistance. The Court finds that defendants could reasonably have believed Mr. Cochran would pose a threat to their safety, resist arrest, and/or attempt to flee. Thus, in the context of this arrest, wrestling him to the ground, sitting on his back, and using a K-9 to the extent that Mr. Cochran did not require stitches and did not receive a permanent injury did not violate Mr. Cochran's Fourth Amendment right.

Accordingly, it is hereby

-10-

**ORDERED AND ADJUDGED:**

1.  Defendants Brad Grossman and Frank S. Glover's Motion for Summary Judgment (Doc. #64) is **GRANTED**. The Clerk shall enter judgment in favor of defendants and against plaintiff accordingly.

2.  The Clerk is further directed to terminate all deadlines, including the Final Pretrial Conference scheduled for July 24, 2006, and pending motions as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of July, 2006.

_____
JOHN E. STEELE
United States District Judge


Copies:
Counsel of record
DCCD